IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL ALLEN LARUE,

        Plaintiff,

        vs.                Case No. 11-CV-01126-JTM

CITY OF HAYS,

        Defendant.

MEMORANDUM AND ORDER

This is a federal question action involving alleged violations of the Fourteenth Amendment to the United States Constitution and provisions of the Kansas State Constitution. Plaintiff brought suit alleging deprivation of private property without procedural or substantive due process against defendant. Defendant's Motion for Summary Judgment (Dkt. No. 22) and Defendant's Motion to Strike Plaintiff's Errata Sheet in Part (Dkt. No. 29) are before the court. As provided below, the court grants the defendant's Motion for Summary Judgment and denies the Motion to Strike. The court will disregard the disputed portion of the plaintiff's Errata Sheet.

## I. Factual Background

The following facts are uncontroverted for purposes of this motion.

Defendant, the City of Hays, received a complaint on September 11, 2008, regarding a dilapidated structure located at 307 E. 5th St., Hays, Kansas. That same day, Jim Purdy, an inspector for the City, visited this address and took photographs documenting the condition of the structure,

a shed. On September 18, 2008, the City notified the property owner, plaintiff Michael LaRue, that the shed in his backyard had been designated a dangerous structure. The City further informed plaintiff, by letter, that he had 30 days to appeal this determination and 60 days to abate the nuisance by rebuilding, repairing, or removing the shed. The City also posted a Dangerous Structure Notice on his shed. Plaintiff did not appeal after receiving these notices.

Plaintiff had not attempted to abate the nuisance as of December 23, 2008. The City informed him that it would hold a work session meeting on January 8, 2009, and consider an abatement resolution on January 15, 2009. Plaintiff was invited to attend these proceedings. On January 15, 2009, the City adopted a resolution authorizing it or its designated agent to abate the shed located on plaintiff's property if he himself failed to abate the nuisance within ten days. The following day, inspector Curtis Deines drafted a letter and attached the approved and signed resolution of January 15, 2009. The Hays Police Department hand-delivered Mr. Deines's January 16, 2009, letter to plaintiff on January 21, 2009, because plaintiff had refused to claim certified mail from the City between December 23, 2008, and January 15, 2009. The information contained in this letter regarding the consequences of failure to respond was identical to the notice plaintiff was given on September 18, 2008. Plaintiff did not appeal any order of the City regarding his shed, nor did he make any attempt at abatement, prior to its demolition on January 26, 2009.

Plaintiff appealed a separate case, *State v. LaRue*, Case No. 09-cr-443, No. 11-105464, on July 26, 2011. In his brief (Dkt. No. 23, Exhibit A), plaintiff asked the Kansas Court of Appeals to "conclude that the Notice to Mike LaRue which he received on September 18, 2008, was more than sufficient . . . ." *Id.* at 12. He also requested that the court find that this notice "was more than sufficient and that the later attempt of the City of Hays . . . to serve Mike LaRue with an identical

Notice in January of the following year was unnecessary, superfluous and nonsensical." *Id.* Plaintiff argued that he "received the notices that he was supposed to have received. The function of servicing notice upon him as dictated by the Code [1997 Uniform Code for the Abatement of Dangerous Buildings] being followed by the City of Hays in this case, had been completely fulfilled." *Id.* at 14.

On May 9, 2011, plaintiff filed his Original Petition in state court against the City (Dkt. No. 1). The City removed the case to this court on federal question grounds (Dkt. No. 1), and answered on May 16, 2011 (Dkt. No. 4). On February 17, 2012, the City filed a Motion for Summary Judgment (Dkt. No. 22). The City filed its Motion to Strike Plaintiff's Errata Sheet in Part (Dkt. No. 29) on April 12, 2012.

## II. Legal Standard: Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." *Id.* Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove [nonmovant's] claim; it need only establish

3

that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (alterations added).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at 250-51. Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis in *Matsushita*).

Finally, the court reminds the parties that summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is an important procedural vehicle "designed to secure the just, speedy and inexpensive determination of every action." *Id.* One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Id.*

**III. Conclusions of Law**

*A. Defendant's Motion to Strike Plaintiff's Errata Sheet in Part (Dkt. No. 29)*

The City moves to strike portions of plaintiff's Errata Sheet, specifically the addendum to his response to the following question posed by defense counsel on page 81, line 17 of plaintiff's December 21, 2011, deposition: "Is there a question you thought I was going to ask you that I have not asked you?" Plaintiff's original response was, "I can't think of any right at the moment." The City argues that plaintiff went beyond the bounds of K.S.A. § 60-230(e) and Fed. R. Civ. P. 30(e)(1) by creating and inserting in his errata sheet a question that was never asked and answering it with a new theory of the case. The disputed portion of the Errata Sheet appears as follows:

Addendum to response of question presented by Mr. Mackay.

Q: What are your thoughts about the actions performed by the City of Hays concerning the demolition of the shed prior to the statutory right to do so?

A: It is my position that, by demolishing the shed prior to the proper deadline afforded by the Kansas statutory law, the City assumed any and all financial responsibility for the act. The disputed time frame is all important. Secondly, if a party presents itself on private property without a legal right to be there is [sic] trespassing, committing an act of destruction of property is criminal trespassing, and contracting with a third party to commit property destruction becomes a conspiracy to commit a criminal act. Unless there is a double standard in the law between private citizens' acts and governmental bodies' acts, the destruction of the shed can be considered a multicount criminal act.

Errata Sheet of Michael LaRue, P. 85-86 (Dkt. No. 29, Exhibit A). Plaintiff counters that he is entitled to make any changes he desires, either in form or substance. He contends that the most intelligent way to handle the disputed portion of the Errata Sheet would be to delete the question he added and retain the complete declarative or answer portion.

In support, plaintiff cites Fed. R. Civ. P. 30(e), which he quotes as follows in his Response (Dkt. No. 31): "Any changes in form or substance which the witness desires to make shall be entered upon the deposition . . . ." However, as the City correctly notes in its Reply (Dkt. No. 32), plaintiff

5

cites a version of the rule that no longer exists. The current version of Fed. R. Civ. P. 30(e) states, "[o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days . . . in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Similarly, Kan. Stat. Ann. § 60-230(e) states, "the deponent shall have 30 days . . . in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making such changes." The City argues that plaintiff failed to comply with Fed. R. Civ. P. 30(e) because he did not write his reasons for making changes to his deposition. Furthermore, the City contends that plaintiff effectively created a sham affidavit to form a material issue of fact in order to defeat the City's Motion for Summary Judgment, thus exceeding the rule's purpose. The City asks that no portion of the proposed change to plaintiff's deposition at 81:17 be allowed.

In *Myers v. Dolgencorp, Inc.*, the court considered a defendant's motion to strike "corrections" to the plaintiff's deposition. No. 04-4137, 2006 WL 408242, *1 (D. Kan. Feb. 15, 2006). The defendant argued that the plaintiff made substantive changes to her deposition testimony through an errata sheet in an attempt to rewrite her testimony and manufacture an issue to avoid summary judgment. *Id.* The court examined the purpose of Fed. R. Civ. P. 30(e), concluding that it permits non-material changes to deposition testimony, as well as material changes that satisfy the test adopted by the Tenth Circuit Court of Appeals in *Burns v. Board of County Commissioners of Jackson County, Kansas*, (330 F.3d 1275 (10th Cir. 2003)). *Id.* In *Burns*, the Tenth Circuit held that changes made pursuant to Rule 30(e) should be evaluated under the sham affidavit analysis articulated in *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986). *Id.* The *Burns* court listed the

factors to be considered when determining whether to permit Rule 30(e) changes, including: (1) whether the affiant was subject to cross-examination during his earlier testimony; (2) whether the affiant had access to the pertinent evidence at his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) whether the affidavit attempts to explain confusion reflected in earlier testimony. *Id.* (citing *Burns*, 330 F.3d at 1282) (quoting *Franks*, 796 F.2d at 1237). The court stated that errata sheets may be used to correct errors or clarify answers, but may not be used to alter what has been stated under oath. *Id.* (citing *Rios v. Bigler*, 847 F. Supp. 1538, 1546 (D. Kan. 1994)). The *Burns* court reasoned that if Rule 30(e) granted such wide latitude, "'one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.'" *Id.* (quoting *Burns*, 330 F.3d at 1282). The court in *Whitaker v. Trans Union Corporation* also looked to the *Burns* decision for guidance. No. 03–2551, 2004 WL 1982527, *1 (D. Kan. Sept. 3, 2004). In that case, the plaintiffs submitted errata sheets which the defendants argued substantially changed portions of their deposition testimony. *Id.* The defendants sought a court order to strike those portions of the errata sheets. *Id.* The court adopted an approach approved by the Tenth Circuit in *Burns*: in resolving summary judgment motions, a court should disregard substantive changes in deposition testimony included in errata sheets rather than strike the errata sheets. *Id.* at *2.

The disputed addendum contained in the Errata Sheet to plaintiff's deposition does not make the types of changes permitted by Fed. R. Civ. P. 30(e). First, the creation of a question and an answer in response to that question do not constitute non-material changes to plaintiff's deposition testimony. He did not correct an error or clarify an answer; rather, he made a number of allegations

not included in the Pretrial Order (Dkt. No. 21). Second, neither does plaintiff's addendum satisfy the factor test articulated in *Franks v. Nimmo.* The events at issue in this case occurred between September 2008 and January 2009. Plaintiff's deposition was conducted December 21, 2011, well after these events had transpired, suggesting that plaintiff had access to the pertinent evidence at the time of his deposition. Indeed, nothing plaintiff included in the errata sheet was newly discovered evidence which came to light between his deposition and the submission of the errata sheet. The City properly cites *Cubie v. Bryan Career College, Inc.*, in which a plaintiff's affidavit in opposition to a summary judgment motion was stricken as an attempt to create sham issues of fact. 244 F.Supp. 2d 1191 (D. Kan. 2003). The court found that the plaintiff had the ability and ample opportunity to testify to the facts in her affidavit during her original deposition:

> Nothing suggests that [plaintiff] was unable to testify to these facts during her deposition. Nothing in her affidavit is newly discovered evidence; all of the newly described incidents occurred before the time of the deposition, and were incidents that were perceived by [plaintiff], as the victim of the alleged harassment. Nothing suggests that any of the newly described incidents were not within [plaintiff]'s knowledge and memory at the time of her deposition. Moreover, the deposition questions were crafted to elicit facts that would have been relevant in both her state and federal claims.

*Id.* at 1195. Finally, the disputed portion of plaintiff's errata sheet does not attempt to explain confusion reflected in his earlier testimony. It does not clarify an earlier answer; instead, it adds a question of plaintiff's creation and a corresponding answer that asserts a number of criminal theories for the first time.  Plaintiff did not give a reason for these changes as required by Fed. R. Civ. P. 30(e). It appears the addendum was intended to create controverted facts in an effort to defeat the City's summary judgment motion. For these reasons, this court will follow the approach articulated in *Whitaker* and disregard the substantive changes to plaintiff's deposition testimony made in the errata sheet rather than strike the improper portion.

*B. Defendant City of Hays' Motion for Summary Judgment (Dkt. No. 22)*

 1. Date of Abatement of Plaintiff's Property

In plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 26), he attempts to controvert the date on which the City abated the shed on his property. In paragraph 17 of the City's Memorandum in Support of Motion for Summary Judgment (Dkt. No. 23) under the heading "Statement of Uncontroverted Facts," the stated date of the abatement is January 26, 2009. In his response, under the heading "Statement of Controverted Facts," plaintiff does not address or contradict paragraph 17 of defendant's motion or the date alleged therein. However, in the section entitled "Argument and Authorities" plaintiff states the shed was demolished on January 23, 2009, a fact he also alleged in two depositions and his Response. This is in contrast to both plaintiff's original Petition (Dkt. No. 1) and subsequent stipulation in the Pretrial Order (Dkt. No. 21), which establish the date of abatement as January 26, 2009. The City's Reply (Dkt. No. 30) characterizes the inconsistency of plaintiff's later statements as "an apparent attempt to create an issue of material fact and defeat summary judgment."

When filling out the pretrial order, each party is given a pretrial order form with an identical set of instructions. The opening paragraph of the form states, "[t]his pretrial order shall supersede all pleadings and control the subsequent course of this case.  It shall not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice." Under the heading "Stipulations," the parties are provided with the following set of instructions:

 [Separately state and letter each stipulation, including the following, where appropriate and as agreed to by the parties in this case.]

9

a.    The following facts are uncontroverted:
[Insert separately numbered subparagraphs after carefully consulting the complaint and answer, responses to requests for admissions, interrogatory answers, etc. Counsel must confer in good faith and try to make this list as comprehensive as possible.  Only in truly exceptional cases should there be a failure to stipulate to some facts.]

PRETRIAL ORDER FORM. Parties are generally bound by the pretrial order and the facts stipulated to in the pretrial order. *Smith v. Morton Intern., Inc.*, No. 09–1050, 2011 WL 768747, *1 (D. Kan. Feb. 28, 2011). As a general rule, courts deem stipulations of fact as conclusive without additional evidentiary support in the record, "'absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement.'" *Glover v. NMC Homecare, Inc.*, No. 00-3266, 2001 WL 811786, *5 n. 6 (10th Cir. July 18, 2001) (quoting *In re Durability Inc.*, 212 F.3d 551, 555 (10th Cir. 2000)). Because the pretrial order "'represents a complete statement of all the contentions of the parties,'" a court is justified in relying heavily on it when ruling on summary judgment motions. *Hung Duc Bui v. IBP, Inc.*, 201 F.R.D. 509, 513 (D. Kan. 2001) (quoting *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817 (10th Cir. 1979)). Because the interests of finality underlying the purposes of a pretrial order are great, a court will not lightly be persuaded to revise pretrial orders by adding matters which could have been corrected earlier after a summary judgment order. *Id.*

In the Pretrial Order (Dkt. No. 21) submitted to this court, paragraph 7 under the heading "Stipulations" states, "On January 26, 2009 at approximately 2:00 p.m. the City removed the structure from Plaintiff's property." This stipulation included in the Pretrial Order drafted by both parties, is clear and unambiguous and there are no allegations before the court that plaintiff's assent to the Pretrial Order was not informed or voluntary. To allow plaintiff to controvert the date of abatement to which he stipulated in the Pretrial Order would be unjust to the City, which has

justifiedly relied on the stipulations. Accordingly, the court will treat the Pretrial Order as the complete statement of all of the parties' contentions, and, thus, will rely on it in establishing the date of the abatement and considering the City's motion for summary judgment.

### 2. Applicability of K.S.A § 60-206(a) (2009)

The City argues it is entitled to summary judgment because the abatement resolution adopted on January 15, 2009, was not subject to Kan. Stat. Ann. § 60-206(a) (2009) as plaintiff claims. Kan. Stat. Ann. § 60-206(a) states, "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in computation." He argues that upon receiving notice of the City's January 15, 2009, abatement resolution, he believed he had ten days, excluding weekends and holidays, from the date of receipt to abate the nuisance on his property. By plaintiff's calculation, the ten-day period expired January 30, 2009, four days after the City demolished his shed on January 26, 2009. The City contends that the Kansas Rules of Civil Procedure do not apply to its January 15, 2009, resolution, or to any abatement or demolition in which the City or its agents took part on January 26, 2009. As support, the City cites Article 2, Chapter 60 of the Kansas States Annotated, which contains the Civil Rules of Procedure in Kansas. "This article governs the procedure in the district courts of Kansas . . . and governs the procedure in all original proceedings in the supreme courts in all suits of a civil nature whether cognizable as cases at law or in equity, except as provided in K.S.A. 60-265." KAN. STAT. ANN. § 60-201(b). Rather, the City claims it was acting in accordance with the Uniform Code for the Abatement of Dangerous Buildings, adopted by City of Hays Ordinance § 11-422 (Dkt. No. 23, Exhibit E). After notice has been served of a city's determination regarding property or the action of any building

official, the Uniform Code establishes a 30-day period for appeal. 1997 UNIF. CODE FOR ABATEMENT OF DANGEROUS BLDGS. § 401.2(5). "[F]ailure to appeal will constitute a waiver of all rights to an administrative hearing and determination of the matter." *Id.* The City sent plaintiff notice of Inspector Purdy's determination that the shed was a dangerous structure by certified mail and by posting a Dangerous Structure Notice on his shed on September 18, 2008. The City complied with the requirements of the Uniform Code.

In the City's Memorandum in Support of its Motion for Summary Judgment (Dkt. No. 23), it points to an admission by plaintiff as acknowledgment that Kan. Stat. Ann. § 60-206(a) had no force or effect in regard to the abatement resolution. The request for admission asked plaintiff to admit or deny that the Kansas Rules of Civil Procedure had no force or effect in regard to the abatement resolution. The City contends its request was proper pursuant to Fed. R. Civ. P. 36(a)(1)(A), which states, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: facts, the application of law to fact, or opinions about either." Plaintiff counters that the request for admission cited by the City was an improper legal conclusion, prohibited by the Federal Rules. He cites the court's decision *Utley v. Wray*. No. 05-1356, 2007 WL 2703094 (D. Kan. Sept. 14, 2007).  In *Utley*, a defendant sought a protective order in response to one of plaintiff's Requests for Admissions,  arguing that it asked her to respond to a purely legal conclusion. *Id.* at *3. The request at issue asked the defendant to admit or deny that "[n]o other health care provider is at fault for Brian Utley's death." *Id*. "Although Rule 36 allows for requests applying law to fact, 'one party cannot demand that the other party admit the truth of a legal conclusion.'" *Id.* (citations omitted) (quoting *Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006)). "Further,

other District Courts have held that 'a request for admission which involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered to be inappropriate.'" *Id.* (quoting *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997)). The court found that request was nothing more than a demand that the defendant admit the truth of a legal conclusion, and granted the protective order. *Id.*

However, the request for admission at issue in the case at hand is distinguishable from the objectionable request in *Utley*. The request in *Utley* asked a party to make a legal conclusion reserved for a judge. The City's request asked plaintiff to make an application of law to fact, or alternatively, to state his opinion about the application of law to fact.  The City's request fell within the bounds of Fed. R. Civ. P. 36(a)(1)(A), and thus, plaintiff's admission was properly obtained. "Fed. R. Civ. P. 36(b) provides that a matter admitted under Rule 36 is conclusively established unless the court permits the admission to be withdrawn or amended." *Thompson v. Harness*, No. 11–1220, 2012 WL 1893505, at *1 (D. Kan. May 23, 2012). Though he calls the City's request improper, he has not sought to withdraw or amend his response. Even if he had, this court would have denied his request based on the policy behind Fed. R. Civ. P. 26(a)(1)(A): "Rule 36(b) 'emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.'" *Id.* (quoting FED. R. CIV. P. 36 advisory committee's note).

### 3. Procedural Due Process Claim

The City argues it is entitled to summary judgment on plaintiff's procedural due process claim because plaintiff received all the proper notice of the proposed abatement, and was given

ample opportunity to voice his objection or concerns about the abatement. He argues that because the City adopted a new resolution on January 15, 2009, he was entitled to an additional ten-day notice period after receiving the City's January 16, 2009, letter, citing a portion of his deposition: "It is my position that, by demolishing the shed prior to the proper deadline afforded by the Kansas statutory law, the city assumed any and all financial responsibility for the act. The disputed time frame is all important." Deposition of Michael LaRue, Erratum Sheet page 86, unnumbered lines 6-11 (Dkt. No. 26, Att. 1). Even had the court not determined it would disregard this statement, it does not establish the period of notice plaintiff was due.

The Fourteenth Amendment Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." *Elwell v. Byers*, No. 08–2227, 2011 WL 1980277, *3 (D. Kan. May 20, 2011) (quoting U.S. CONST. amend. XIV, § 1). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the . . . Fourteenth Amendment." *Id.* (quoting *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)). "When evaluating a procedural due process claim, the court must determine whether the plaintiff (1) possessed a property interest protected by the Due Process Clause; and (2) received appropriate process." *Johnson v. Bd. of County Comm'n of Butler County*, No. 09–1221, 2011 WL 765864, *3 (D. Kan. Feb. 25, 2011) (citing *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006)). The fundamental protections required for procedural due process are notice and an opportunity to be heard. *Id.* (citing *Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004)).

In its Motion for Summary Judgment, the City cites *Dahl v. Shawnee*. No. 92,144, 2006 WL

851232 (Kan. Ct. App. Mar. 31, 2006). In that case, a plaintiff appealed the grant of a motion for summary judgment in his suit against the City of Shawnee arising from the demolition of a damaged foundation on his property. *Id.* at *1. The resolution at issue in *Dahl* conformed to K.S.A. § 12–1753, and required that a reasonable time must be allowed after notice was served to the owner of an unsafe or dangerous structure to allow for the repair or removal of the structure. *Id.* at *6. The statute stated that if the structure's owner failed to repair or remove it within the time stated in the resolution or failed to diligently prosecute the determination, the city or a city contractor may proceed to remove the structure. *Id.* at *7. The court concluded that the city's resolution was the only order necessary before proceeding with the demolition of an unsafe or dangerous structure under K.S.A. § 12–1755:

> Under this statute, no further order is necessary before a city may raze and remove the unsafe or dangerous structure. Similarly, Resolution 1158 required no other order before the City could demolish Dahl's foundation. Resolution 1158 set out the requirements that Dahl was required to perform by certain dates. If Dahl failed to meet the requirements, Resolution 1158 stated that the City Council would cause the foundation wall to be removed, the excavation to be filled, and the ground surface to be seeded and mulched. No further order was required by the City Council to cause the demolition of Dahl's foundation.

*Id.* The court affirmed the defendant's motion for summary judgment.

Similarly, in *Johnson v. Board of County Comm'n of Butler County*, the county moved for summary judgment of a property owner's claim that the removal of a house on his property violated his Fourteenth Amendment guarantee of due process. 2011 WL 765864, at *1. The court rejected the property owner's claim that he was not given proper notice prior to the removal, concluding he had received both notice and an opportunity to be heard before removal was commenced. *Id.* at *4. The plaintiff chose to move the house onto his property during the middle of a nuisance abatement action that lasted several years and included hearings and agreed orders. *Id.* at 3. The plaintiff did

not appeal any orders from the county, he never tried to exempt the structure during the pendency of the abatement action, and he was present during the county's entire clean-up process of his property. *Id.* In granting the county's motion, the court stated, "the record demonstrates years worth of hearings and correspondence regarding the property, which clearly gave [plaintiff] notice and the opportunity to be heard." *Id.*   As did the plaintiff in *Johnson*, plaintiff received notice of the designation of his shed as a dangerous structure, his right to appeal that designation, the City's work session meeting in which the City considered abatement of the shed, and the resulting resolution. He did not appeal the City's designation and made no attempts to repair, remove or otherwise abate the shed on his property. The court finds that the City provided plaintiff with both reasonable notice and an opportunity to be heard, thus satisfying the requirements of procedural due process.

### 4. Substantive Due Process Claim

The City argues it is entitled to summary judgment on plaintiff's substantive due process claim because he cannot show that the City's action was arbitrary, capricious, or without a rational basis. Further, the City claims abating plaintiff's shed would not shock the conscience of federal judges. Plaintiff does not specifically address substantive due process in his response (Dkt. No. 26) to the City's motion for summary judgment. He alleges only that the City destroyed his shed before the ten-day notice period expired, and concludes this was "a deprivation of property without due process and/or denial of procedural due process." In his petition (Dkt. No. 1), plaintiff alleges the City demolished his shed before the ten-day notice period was up, and argues the City's action deprived him of both substantive and procedural due process.

"Government action violates substantive due process when it either deprives an individual

16

of a fundamental right or interest or shocks the judicial conscience." *Heublein v. Wefald,* 784 F.Supp.2d 1186, 1195 (D. Kan. 2011) (citing *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)). Under the first test, a court must inquire whether the asserted right or interest is so "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (quoting *Seegmiller*, 528 F.3d 767).  If the asserted right or interest does not meet the first standard, a court must then ask whether the government action causing the deprivation is rationally related to a legitimate governmental interest. *Id.* (citing *Seegmiller*, 528 F.3d 771). Turning to the second test, a substantive due process claim is stated if the plaintiff alleges that government action is "arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* (quoting *Seegmiller*, 528 F.3d 767). "Plaintiffs must show a 'high level of outrageousness' and a magnitude of potential or actual harm which is truly conscience shocking." *Taylor v. Byers*, No. 10–1383, 2011 WL 3704736, *4 (D. Kan. Aug. 23, 2011) (citing *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995)).

Based on the uncontroverted facts in this case, this court concludes that the City's actions in this abatement case were neither arbitrary nor capricious, nor do they rise to a level of outrageousness that shocks the conscience. The City received a complaint regarding plaintiff's shed on September 11, 2008, and an inspector who visited the property determined it was a dangerous structure.  Between this date and demolition of the shed on January 26, 2009, the City provided four separate notices to plaintiff concerning the abatement process: 1) on September 18, 2008, the City notified plaintiff in a certified letter that he had 30 days to appeal the City's determination and 60 days to abate the nuisance by rebuilding, repairing, or removing the shed; 2) on September 18, 2008,

a Dangerous Structure Notice was posted on his shed; 3) on December 23, 2008, the City informed him that it would hold a work session meeting and consider an abatement resolution; and 4) on January 16, 2009, the City hand-delivered a letter to plaintiff containing the approved and signed January 15, 2009, abatement resolution regarding his shed. More than four months passed between the City's initial determination that plaintiff's shed was a dangerous structure and abatement of the shed, and he did nothing in response. The City made reasonable efforts to inform plaintiff that it intended to abate the dangerous structure on his property, and allowed him a reasonable amount of time to remedy the problem before intervening.

### C. Judicial Estoppel

The City finally argues the court is judicially estopped from holding that plaintiff did not have sufficient notice regarding the abatement of his shed based on his pending Kansas Court of Appeals case. In *State v. LaRue*, Case No. 09-cr-443, No. 11-105464, plaintiff asserts in his brief (Dkt. No. 23, Ex. A) that the September 18, 2008, notice he received regarding his shed "was more than sufficient" and that the City's attempt to serve him with additional notice in January 2009 was "unlawful, illogical and without any legal authority." He further argues that the September 18, 2008, letter and the Dangerous Structure Notice posted on his shed were the only notices required by the Uniform Code, and thus, that the "function of serving notice upon him . . . had been completely fulfilled." The City contends that these statements are clearly inconsistent with plaintiff's claim before this court that he was deprived of due process because he did not receive sufficient notice regarding the City's abatement resolution.

In support, the City cites this court's decision in *Lujan v. Exide Technologies*. No. 10–4023,

2011 WL 1594952 (D. Kan. April 27, 2011). The court consulted the Tenth Circuit's discussion of the doctrine of judicial estoppel in *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005), stating, "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . .'" 405 F.3d at 1069 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). While the doctrine of judicial estoppel may not be reduced to an elemental rule, a court should consider a number of factors when deciding if the doctrine applies, including: (1) whether the party's current position is clearly inconsistent with its earlier position; (2) whether the party persuaded a court to accept the party's earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that one of the courts was misled; and (3) whether the party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party. *Id.* The City argues that one court's ruling on plaintiff's claims will necessarily create the perception that the other court was misled, as one is asked to find that he did not receive enough notice to satisfy his due process rights while the other is asked to find that the notice served was more than sufficient. Furthermore, the City contends that if this case proceeds, plaintiff will argue to this court the deficiency of notice, and argue to the Court of Appeals that the City provided superfluous notices. It concludes that this employment of "polar opposite" arguments regarding the same events would give plaintiff an unfair advantage.

Plaintiff counters that the requisites of the doctrine of judicial estoppel have not been met, citing *Knorp v. Albert*, 29 Kan. App.2d 509, 518 (2001); *rev. den.* 272 Kan. 1418 (2001). In this decision, the Kansas Court of Appeals stated that a party may assert judicial estoppel when four elements are satisfied: (1) a party's position contradicts a declaration in a prior judicial action; (2)

the two actions involve the same parties; (3) the party asserting the theory has changed its position; and (4) the changed position was adopted in reliance on the prior statement. *Id.* at 518. Plaintiff argues that the second, third and fourth factors have not been met, as the same parties are not involved in both cases and the City has not argued that it was induced to change its position in reliance upon any prior statement plaintiff made in the Court of Appeals case.

This court is not bound by state court decisions regarding judicial estoppel, and thus will follow the approach taken in *Lujan*. Based on the factors enumerated in *Lujan*, the doctrine of judicial estoppel applies to this case. Plaintiff's claim that the abatement of his shed in January 2009 occurred before the requisite notice period had expired is clearly inconsistent with his claim to the Court of Appeals that the two notices he received in September 2008 were sufficient, and that subsequent attempts to serve notice were superfluous. If this court were to accept plaintiff's claim that he received insufficient notice, and the Court of Appeals accepted his claim that the September 2008 notices were all that the City was required to provide, these contradictory conclusions would almost certainly create the perception that one of the courts was misled. Finally, plaintiff would derive an unfair advantage if he was allowed to prevail on claims based on diametrically opposed versions of the facts. The Tenth Circuit explained in *Bradford v. Wiggins* that "[t]he doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" 516 F.3d 1189, 1194 (10th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). As the old proverb goes, plaintiff cannot have his cake and eat it, too.

IT IS ACCORDINGLY ORDERED this 11th day of July 2012, that Defendant's Motion for Summary Judgment (Dkt. No. 22) is granted.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's Errata Sheet in Part (Dkt. No. 29) is denied. The court will disregard the disputed portion of the plaintiff's Errata Sheet.

___s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE
